IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>               Plaintiff,<br><br>    vs.<br><br>SIDNEY BRITT,<br><br>               Defendant. | **8:19CR28**<br><br>**FINDINGS AND RECOMMENDATION** |

      This matter is before the undersigned magistrate judge on defendant Sidney Britt's motion to vacate his sentence pursuant to 28 U.S.C. § 2255 (Filing No. 148) for ineffective assistance of counsel. Pursuant to the Memorandum and Order entered by the district judge,[1] Britt's motion was denied except for Britt's allegation that his trial counsel failed to file a notice of appeal as requested, which issue was referred to the undersigned magistrate judge to appoint counsel, hold an evidentiary hearing, and file a findings and a recommendation. (Filing No. 172).

      The undersigned magistrate judge appointed counsel (Filing No. 173) and held an evidentiary hearing on February 25, 2021. Britt was present at the hearing with his appointed attorney, Sean Conway. The government was represented by Assistant United States Attorney, Kelli Ceraolo. Britt testified on his behalf. Britt's trial attorney, Clarence Mock, testified on behalf of the government. Exhibit 1 (Filing No. 168) was offered by the government and received without objection. A transcript (TR.) of the hearing was prepared and filed on March 8, 2021. (Filing No. 211). The parties submitted post-hearing briefs. (Filing No. 210; Filing No. 217). The matter is now fully submitted to the Court. After hearing the testimony from Britt and his trial counsel, and in assessing their credibility, the undersigned magistrate judge finds Britt did not expressly direct his attorney to file an appeal and will therefore recommend Britt's motion to vacate be denied.

**PROCEDURAL BACKGROUND**

      Britt was charged in a Superseding Indictment on June 17, 2019, with (1) Hobbs Act robbery, (2) robbery of personal property of the United States, (3) kidnapping of an officer or employee of the United States, (4) using, carrying, or possessing a firearm during and in relation

---

[1] The Honorable Brian C. Buescher, United States District Court for the District of Nebraska.

to a crime of violence, and (5) receiving stolen government money or property. (Filing No. 76). Pursuant to a Plea Agreement (Filing No. 102), in exchange for Britt's guilty plea to the charges for Hobbs Act robbery in violation of 18 U.S.C. § 1951 and for using, carrying, or possessing a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A), the government agreed to dismiss the three remaining charges. The Plea Agreement included a waiver of appeal provision. (Filing No. 102 at p. 5). Britt signed a Petition to Enter a Plea of Guilty (Filing No. 101) and the Court accepted Britt's guilty plea on August 19, 2019. (Filing No. 99). On January 15, 2020, the Court sentenced Britt pursuant to the parties' Rule 11(c)(1)(C) plea agreement to 156 months' incarceration for the Hobbs Act robbery and 84 months' incarceration for the related use of a firearm, for a total sentence of 240 months. (Filing No. 138 at p. 2).

On June 29, 2020, Defendant filed the instant motion pursuant to § 2255 asking the Court to vacate his sentence due to ineffective assistance of counsel. Relevant to the issue currently before the Court, Britt asserts in his motion that he told his trial counsel, Clarence Mock, to file a notice of appeal when Mock came to visit Britt "at court and in the jail." (Filing No. 148 at p. 2). The Court granted the government's motion seeking confirmation that Britt had waived attorney-client privilege and directed Mock to file an affidavit responding to Britt's allegations. (Filing No. 166). Mock filed an affidavit denying that Britt ever asked Mock to file an appeal. (Filing No. 168 at pp. 4-5). Due to these competing assertions, the matter was referred to the undersigned magistrate judge to hold an evidentiary hearing to assess the credibility of the witnesses and their competing assertions. (Filing No. 172 at p. 8). The undersigned magistrate judge held the evidentiary hearing on February 25, 2021.

## HEARING TESTIMONY

At the hearing, Mock and Britt testified to their recollections of their discussions preceding Britt's acceptance of the plea agreement and sentencing.

Mock testified he first discussed the plea agreement and government's proposed offer with Britt on July 24, 2019. (TR. 22). Mock's next meeting with Britt regarding the plea agreement took place on July 30, 2019, at the Douglas County Correctional Center ("DCC") where Britt was housed. Mock testified that on that date he went through the government's proposed plea agreement with Britt "line by line." (TR. 22). Mock testified their "discussion revolved around the quantum of proof that would be available to the Government to prove the Government's theory

2

of the case that, in fact, [Britt] was the person who held the firearm and pointed it at [the victim's] head and made the threats to him[.]" Mock testified he primarily discussed his opinion as to whether Britt's two brothers would testify against Britt at trial and how that would impact any of his defenses. (TR. 23). Mock testified he does not recall Britt talking about hesitation in accepting the plea as to the § 924(c) charge based on Britt's belief he was not responsible for the firearm. Mock testified that Britt did not express his desire to file an appeal if this § 924(c) issue was not addressed before the sentencing judge and Britt did not ask Mock to file an appeal during this discussion. (TR. 23-24). Mock testified that as he was negotiating the plea agreement, "[t]here were aspects of the plea agreement . . . that [Britt] was not happy with in terms of how the guidelines could potentially be interpreted." (TR. 22). As to the appeal waiver in the plea agreement, Mock testified he advised Britt he was "not giving up a whole lot by waiving [his] right to appeal because you're virtually not going to have any grounds to appeal in this particular case," but advised Britt he could "attack me on a habeas action . . . if you felt like you were grieved and wanted to do that." (TR. 30).

Britt testified to his recollection of his conversation with Mock at the DCC on July 30, 2019. Britt testified he and Mock "discussed issues with the [§] 2255 and the Hobbs Act robbery" and discussed "the clause in the plea agreement about my appealing rights and I -- my wanting to retain my appeal rights and to appeal if the [§] 924(c) was not addressed at [the] sentencing hearing." (TR. 6-7). Britt testified to his belief that he was "falsely accused" under § 924(c) because he "never had a gun." (TR. 7). Britt testified he nevertheless understood he was being asked to sign a plea agreement that contemplated he would plead guilty to, and would be sentenced for, the charge under § 924(c). (TR. 7-8). Britt testified that Mock advised him of the difficulties or challenges with Britt's position, but told Britt he "could appeal the situation after sentencing if I wanted to." Britt testified that on this date he "indicate[d]" he wanted to appeal "if the judge sentenced [him] on the [§] 924(c)." (TR. 8).

Britt testified he knew at the plea hearing on August 19, 2019, that, by accepting the plea agreement, he was agreeing to a sentence of 240 months and that he was pleading guilty to the § 924(c) charge. Britt testified Mock did advise him about the appeal waiver prior to accepting the plea but indicated Britt could still appeal, although he advised the appeal would probably not be successful. (TR. 13-14). Britt testified he did agree to the sentence of 240 months in the plea agreement, but "felt that was wrong" because the sentence contained an "official victim

3

enhancement" that he did not think applied. (TR. 15, 17). Britt testified "it was clearly stated in the PSI that I received from the Probation Office that [the official victim enhancement] did not apply to me and that was the main issue I had with the plea agreement, which I continually discussed with Mr. Mock, which, if I got sentenced to at my sentencing hearing, that I wanted to appeal." (TR. 17). Based upon his belief that the plea agreement's sentence contained this enhancement, Britt "wanted to address that issue at sentencing with the judge . . . [a]nd, if the judge didn't take that into consideration, I wanted to . . . appeal." (TR. 15). Britt testified that at the plea hearing, the district judge[2] did not explain what sentence he was facing without the plea agreement. (TR. 16). The transcript of the plea hearing reflects the district judge did explain the statutory penalties that could be imposed for the charges against Britt, and he replied "No" when he was asked if he had questions about the statutory penalties he was facing. (Filing No. 151 at p. 6).

Britt testified that after the plea hearing but prior to sentencing he had a "series of phone calls" with Mock while Britt was housed in Saunders County, and another phone call while he was housed in Dawson County. (TR. 10-11). Britt testified that during these calls he discussed his desire to withdraw his plea because he "found out the enhancement didn't apply to me and I figured Mr. Mock should've addressed that . . . before I submitted the plea." (TR. 14). Britt testified Mock advised Britt not to withdraw his plea but told Britt it was ultimately his decision. By the date of the sentencing hearing, Britt testified he decided not to withdraw his plea. (TR. 15).

Britt testified that shortly before his sentencing hearing on January 15, 2020, Mock met with Britt at the DCC. Britt testified he discussed his misgivings with the plea during this meeting. Britt testified he "still had issues with the [§] 924(c)" and wanted Mock "to put together any arguments, any motions, and . . . a plea argument in case the sentencing judge . . . still sentenced me to the [§] 924(c)." (TR. 9). Britt testified he was "a bit" unhappy with Mock during this meeting because of the enhancement issue. Britt wanted to have the "enhancement issue" addressed at sentencing, and if it was not, Britt "wanted to express my appealing rights also." (TR. 9). Mock testified he does not recall having a discussion of this nature with Britt. (TR. 21). Instead, Mock testified that his understanding was that Britt had decided he wanted to withdraw his plea. Mock testified Brit was "obviously still upset about how the guidelines worked in his particular case and the conclusion that I had made . . . in the event that he went to trial and was convicted." (TR. 24-25). Mock advised Britt it was his right to ask the Court to withdraw his plea

---

[2] The Honorable Laurie Smith Camp, United States District Judge for the District of Nebraska, now deceased.

4

but had an extended discussion about the consequences of withdrawing his plea. Specifically, Mock again discussed that both of Britt's brothers had made statements to the government implicating Britt and that his brothers "would probably testify [against Britt] in exchange for a 5K1 departure." (TR. 25). Mock testified Britt was "very unhappy" and felt "it was a mistake for him to have entered the 11(c)(1)(C) agreement," so at the end of their discussion Mock stated it was Britt's decision whether to withdraw his plea, and if he did want to withdraw his plea "he needed to bring it up immediately and discuss that with the judge." (TR. 25). Mock testified that when he arrived at the courtroom on the day of sentencing he expected Britt to state he wanted to withdraw his plea, but he did not. (TR. 25-26).

Britt testified that at his sentencing hearing Mock did not address the § 924(c) issue or enhancement issue Britt was concerned about, and that based on their previous discussions, Britt "believe[d]" Mock would appeal Britt's sentence. During the sentencing hearing, the district judge[3] advised Britt that he waived his right to appeal in his plea agreement and if he had "any questions about that waiver of about any remaining right of appeal," he should discuss it with his lawyer. (Filing No. 152 at p. 17). Additionally, at sentencing, the district judge stated he "considered every aspect" of a letter from Britt to the court dated October 8, 2019, wherein Britt outlined his issues with the plea agreement, including the enhancement issue. The district judge also reviewed and outlined the recommendations in the Presentence Investigation Report—the document Britt relies on to assert the official victim enhancement did not apply to him. (*Id.* at pp. 8-13).

Britt testified he did not have any specific discussions with Mock at the sentencing hearing regarding an appeal because Britt felt he previously had been clear about his wishes and did not need to "reiterate" it. (TR. 10). On cross-examination, Britt again testified he did not have any discussions with Mock about filing an appeal on or after his sentencing, but stated it was because he had directly asked Mock to file an appeal:

> Q. Okay. And then, you said that you did not have any discussions on January 15th of 2020, about appealing, specifically, on that date?
>
> A. With Mr. Mock? No, I didn't.
>
> Q. You had assumed, based on your prior communications about being unhappy with the plea agreement, that he understood that you would want to appeal?

---

[3] The Honorable Brian C. Buescher.

5

> A. No, not true. I actually directly told him that I wanted to appeal and, if the sentencing didn't go down -- if the sentencing wasn't without the enhancement or we wasn't addressing the 924(c), that I wanted to appeal. I directly told Mr. Mock that my wishes were, still, that I wanted to appeal whether the successful rate was high or low.
>
> Q. So I just want to make sure I understand. You're – it sounds like you're saying, prior to being sentenced, you told Mr. Mock that, no matter what, you wanted to appeal?
>
> A. Yes, because the . . . because the official victim enhancement was included into the plea agreement and, if I got sentenced with that, I wanted to appeal that issue because it didn't apply to me.

(TR. 16-17).

Mock testified he did not have any discussions with Britt before, during, or after the sentencing hearing regarding Britt's desire to appeal. (TR. 29). Mock testified he "of course" would have filed an appeal had Britt stated he wanted to appeal, despite the plea agreement's appeal waiver. (TR. 21).

On January 29, 2020, fourteen days after sentencing, Britt testified he called Mock's office "To check the progress of the appeal and also to gain sentencing transcripts." Britt testified he spoke to a female paralegal or secretary but did not speak to Mock. Britt testified "the whole intention of the phone call" was to "reiterate . . . that [he] wished to appeal [his] sentence." Britt testified the woman "curtly" expressed to Britt that, after sentencing, Mock no longer represented Britt. (TR. 11-12). Britt testified this "sent up a flag that [Mock] totally ignored my wishes and didn't file my appeal." (TR. 12). On cross-examination, Britt testified he asked the paralegal for a transcript and inquired whether Mock "was available to check the progress on the plea [sic] because I was in CCA Leavenworth." (TR. 18-19).

Mock testified the message relayed to him by his paralegal was that Britt wanted a transcript "and there was no mention of any appeal." Mock's understanding was that Britt was going to "call back for a fuller discussion about exactly what it was that he wanted" but he never did. (TR. 21, 29-30). Mock testified he believed Britt was seeking transcripts for a habeas petition, as Mock had previously discussed with Britt on July 30, 2019. Mock sent Britt materials relevant to a habeas petition. (TR. 30).

6

**FINDINGS OF FACT**

As stated above, the undersigned magistrate judge was tasked with assessing the credibility of Britt and Mock and their competing assertions regarding Britt's allegation he directed Mock to file an appeal. Mock testified unequivocally that he did not have discussions with Britt, "before, during, or after the sentencing hearing regarding Britt's desire to appeal" and that Mock "of course" would have filed an appeal had Britt directed him to do so. (TR. 21, 29). The undersigned magistrate judge finds Mock's testimony credible.

In Britt's pending motion, he identifies two occasions when he told Mock to file a notice of appeal: "when [Mock] came to visit [Britt] at court and in the jail." (Filing No. 148 at p. 2). However, Britt offered no testimony supporting his assertion he asked Mock to file an appeal "at court" as stated in his motion. Mock and Britt both testified regarding two court dates: the plea hearing and the sentencing hearing. Britt did not testify as to any discussions he had with Mock regarding an appeal "at court" at his plea hearing on August 19, 2019. And, Britt clearly testified he did not discuss an appeal or direct Mock to file an appeal "at court" on or after his January 15, 2020, sentencing. (TR. 10, 16-17). Therefore, Britt's testimony does not support his original contention he directed Mock to file a notice of appeal "at court."

Britt's motion also states he directed Mock to file an appeal "in the jail." The testimony reflects Mock met with Britt "in the jail" on July 24 and July 30, 2019, and sometime "shortly before his sentencing hearing on January 15, 2020." Mock and Britt's testimony certainly reflects that, prior to accepting the plea agreement, Britt expressed reservations regarding entering into the plea agreement. But Mock testified to his understanding that Britt's reservations surrounded whether or not to enter into the plea, and after he did accept the plea, whether or not Britt should withdraw his plea and the consequences of doing so, as well as Britt's ability to file a subsequent habeas petition to challenge Mock's legal representation—not that Britt intended to accept a plea agreement he fundamentally disagreed with and then have Mock file a direct appeal.

Britt's testimony regarding his directions to Mock regarding an appeal was contradictory and ambiguous. Britt testified that during his meeting with Mock on July 30, 2019, (prior to accepting the plea), he "indicate[d]" he wanted to appeal "if the judge sentenced [him] on the [§] 924(c)." (TR. 8). Britt testified to his belief that he was "falsely accused" under § 924(c) because he "never had a gun," but nevertheless also testified that he knew by accepting the plea agreement he was pleading guilty to the § 924(c) charge. Britt's testimony is contradicted by

7

Mock's testimony. Mock testified that he did not recall Britt being hesitant to accept the plea as to the § 924(c) charge based on Britt's belief he was not responsible for the firearm. Mock testified that Britt did not express his desire to file an appeal if that issue was not addressed before the sentencing judge and Britt did not ask Mock to file an appeal during this July 30, 2019, discussion. (TR. 23-24). Mock testified that, during this meeting, he discussed the plea agreement's appeal waiver and how Britt would have "virtually" no grounds to appeal but advised Britt he could file a habeas petition to "attack" Mock's representation. Britt did partially corroborate Mock's testimony, recognizing he and Mock "discussed issues with the [§] 2255[.]" (TR. 7). And, Britt's testimony is inconsistent with his plea agreement, guilty plea, and his decision to not move for withdrawal of the plea, and is refuted by Mock's testimony. Therefore, the undersigned magistrate judge does not find Britt's assertion credible that on July 30, 2019, he "indicate[d]" to Mock that he wanted to appeal "if the judge sentenced [him] on the [§] 924(c)."

Britt also testified he had a "series of phone calls" with Mock after the plea hearing. Britt's own testimony reflects he only discussed his desire to withdraw his plea, not appeal, because he "found out the enhancement didn't apply to me." (TR. 15).

Britt also testified he "wanted to . . . appeal" if the sentencing judge "didn't take [the official victim enhancement issue] into consideration." (TR. 15). However, Britt testified he knew he was agreeing to a sentence of 240 months in the plea agreement. (TR. 15; Filing No. 151 at pp. 9-10). Additionally, the district judge did address the "enhancement issue" at the sentencing hearing. At sentencing, the district judge stated he "considered every aspect" of the letter from Britt to the court wherein Britt discussed his issue with the enhancement. The district judge also reviewed and outlined the recommendations in the Presentence Investigation Report, which is the document Britt relied on to assert the official victim enhancement did not apply to him. The district judge also explained the 240 month sentence satisfies the factors set forth in 18 U.S.C. § 3553. (Filing No. 152 at pp. 7-13). Therefore, even if Britt clearly communicated a contingent appeal request to Mock—which the undersigned magistrate judge finds he did not—Britt's contingency that he "wanted to . . . appeal" if the district judge did not address the "enhancement issue" was not satisfied because the enhancement issue was, in fact, considered by the sentencing judge.

Finally, Britt's counsel argued for the first time during the evidentiary hearing that Britt requested an appeal during the telephone call to Mock's office on January 29, 2020, fourteen days after the sentencing hearing. (TR. 35). However, Britt's testimony on this issue was also

contradictory. Britt first testified he was just "check[ing] the progress" of his appeal and requesting transcripts. But Britt then testified, "the whole intention of the phone call" was to "reiterate . . . that [he] wished to appeal [his] sentence." (TR. 11-12). Mock testified that the message relayed to him by his paralegal was that Britt wanted a transcript "and there was no mention of any appeal." Mock testified he believed Britt was seeking transcripts for a habeas petition, as Mock had previously discussed with Britt on July 30, 2019, and he sent Britt materials relevant to a habeas petition. The undersigned magistrate judge finds Mock's testimony on this matter credible, particularly where Britt did not assert in his motion that he directed Mock to file an appeal during any phone calls.

A defendant wishing to appeal "must have made 'manifest' [his] desire to appeal by expressly instructing [his] attorney to appeal." *Nupdal v. United States*, 666 F.3d 1074, 1076 (8th Cir.2012) (quoting *Barger v. United States*, 204 F.3d 1180, 1182 (8th Cir. 2000)). The undersigned magistrate judge finds Britt did not expressly instruct Mock to file an appeal. As that is the only remaining issue in Britt's motion to vacate, the undersigned magistrate judge will recommend Britt's motion be denied. Accordingly,

**IT IS HEREBY RECOMMENDED** to United States District Court Judge Brian C. Buescher that Defendant's Motion Pursuant to 28 U.S.C. § 2255 (Filing No. 148) be denied.

Dated this 2nd day of August, 2021.

BY THE COURT:

s/ Michael D. Nelson
United States Magistrate Judge

## ADMONITION

Pursuant to NECrimR 59.2, any objection to this Findings and Recommendation shall be filed with the Clerk of the Court within fourteen (14) days after being served with a copy of this Findings and Recommendation. Failure to timely object may constitute a waiver of any such objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.